IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND MISC 08 33

IN RE: ADMINISTRATIVE SUBPOENA ISSUED BY NATIONAL TRANSPORTATION SAFETY BOARD TO RHODE ISLAND HOSPITAL

Miscellaneous Action No. ________

CA 08 134 S

**MOTION TO COMPEL PRODUCTION**

The United States moves to compel compliance with a federal administrative subpoena *duces tecum* for two blood specimens. On March 18, 2008, the National Transportation Safety Board ("NTSB"), an independent federal agency, issued the subpoena to Rhode Island Hospital ("RIH"). *See* Ex. A(1) (NTSB Subpoena and coverletter). The next day, by letter to the NTSB, RIH objected to the subpoena and refused to produce the blood specimens. *See* Ex. A(3) (Letter from RIH to NTSB).

RIH claims in its letter that production is forbidden by state and federal law. RIH's analysis is flawed. There is no legal basis for withholding production.[1] But even if there were, the Court has the authority to order production, and here production is necessary for the NTSB's statutorily authorized and mandated accident investigation. NTSB Investigator Ruben Payan describes the accident, the investigation, and the need for the blood specimens in his Declaration, which is attached as Exhibit A. The specimens belong to two Amtrak employees involved in a passenger train accident. NTSB needs to test the specimens to determine whether impairment played any role in the accident.

**BACKGROUND**

NTSB is an independent agency responsible for the investigation of various types of transportation accidents, including "a railroad accident in which there is a fatality or

---

[1] Rather than forcing the NTSB to move to compel and thereby imposing the time and costs of such an effort on the NTSB and taxpayers, RIH has the option – and, the Government suggests, the responsibility –of seeking a qualified protective order. *See, e.g.*, 45 C.F.R. § 164.512(e) (specifically subsections (1)(ii)(A) and (1)(v)).

substantial property damage, or that involves a passenger train." 49 U.S.C. § 1131(a)(1). To carry out its responsibilities, the NTSB determines the probable cause or causes of transportation accidents and makes recommendations for the improvement of safety, with the ultimate goal of preventing future accidents.

The NTSB is investigating an accident involving Amtrak Acela Train 2154, a passenger train. Ex. A at ¶ 4. At approximately 1:11 pm on March 13, 2008, the train struck an Amtrak contractor, foreman, and watchman, all part of an Amtrak work crew. *Id.* The contractor died. *Id.* Soon after the accident, the foreman and watchman were transported to RIH for treatment. *Id.* RIH obtained blood specimens from the foreman and watchman, Richard Mallette and Julius Chislom, respectively. *Id.* Both specimens remain in RIH's custody and are being preserved. *Id.*

The NTSB needs to examine the blood specimens as part of the accident investigation. *Id.* at ¶ 6. Examination of these specimens may reveal the presence or absence of substances indicative of impairment, and impairment or the lack of impairment is relevant to the accident investigation and will assist the NTSB in further developing the investigation. *See id.* Without the opportunity to examine the specimens, the NTSB cannot complete its investigation into the cause or causes of the accident, a task that NTSB is statutorily required to perform under 49 U.S.C. § 1131. *See id.*

## ARGUMENT

RIH maintains that blood specimens production is restricted by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Rhode Island's Confidentiality of Health Care Information Act ("CHCIA"), and that therefore RIH cannot release the specimens absent patient authorization, court-ordered warrant, or a subpoena issued by a judicial officer. RIH's position is set forth in RIH's March 19, 2008 letter to NTSB, which is attached as Exhibit 1(B). RIH's position is based on a misinterpretation of HIPAA and

CHCIA.[2]

**1. HIPAA does not restrict dissemination of items that are not "protected health information," and blood does not qualify as protected health information.**

The blood specimens sought are not subject to the requirements of HIPAA. HIPAA sets forth various restrictions on the dissemination of "protected health information." *See*, *e.g.*, 45 C.F.R. § 164.500-532. Blood specimens do not fall under the definition of "health information," and therefore cannot fall under the definition of "protected health information."

"Health information" is defined as "any ***information***, whether oral or recorded in any form or medium, that..." is created or received by various specified entities and that relates to the "past, present, or future physical or mental health or condition of an individual." 45 C.F.R. § 160.103 (emphasis added). Blood specimens are not information, much less health information or protected health information. Although information could be derived from the analysis of blood, the blood itself is not information. Also, although "health information" would include a blood analysis report, the Subpoena in this case does not request any such information. *See* Ex. 1(B). The Subpoena requests only the blood specimens. *See id.*

**2. Even if HIPAA were to restrict provision of blood specimens, it nonetheless does not restrict provision to public health authorities, like the NTSB.**

Section 164.512 of Title 45 of the Code of Federal Regulations sets forth the conditions under which a covered entity, here presumably RIH, is permitted under HIPAA to disclose protected health information. Under this section,

> [a] covered entity may disclose protected health information for the public health activities and purposes [of] a public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling disease, ***injury***, or disability, including but not limited to, the reporting of disease, injury... and the conduct of public health surveillance, public health investigations....

---

[2] The Court has jurisdiction to adjudicate this subpoena dispute, and, where necessary, find contempt. *See* 49 U.S.C. § 1113(a)(4).

45 C.F.R. § 164.512(b)(1) (emphasis added). "Public health authority" is defined broadly to mean "any agency or authority of the United States... that is responsible for public health matters as part of its official ***mandate***." *Id.* at 164.501 (emphasis added). Hence, HIPAA does restrict disclosure of any purportedly protected health information to a public health authority. Consequently, where a public health authority demands purportedly protected health information pursuant to a valid federal subpoena, HIPAA provides no basis for failing to comply.

Federal statute makes clear that the NTSB is mandated to conduct investigations for, *inter alia*, preventing or controlling injury. The NTSB is authorized to investigate various types of transportation accidents, including railroad accidents involving a fatality or a passenger train. *See* 49 U.S.C. § 1131(a)(1)(C).[3] NTSB is statutorily required to report to Congress and other entities of the United States Government means by which to

> reduce the likelihood of transportation accidents similar to those investigated by the [NTSB and to] propose corrective action to make the transportation of individuals as safe and free from risk of injury as possible, including action to minimize personal injuries that occur in transportation accidents.

*Id.* at § 1116(a). The NTSB, in general, is charged with investigating and studying ways in which to enhance transportation safety and document the level of safety being achieved. *See, e.g., id.* at §§ 1116-1117, 1119.

Furthermore, when the HIPAA regulations at 45 C.F.R. § 164.512 were proposed, the Department of Health and Human Services ("HHS"), the agency charged with promulgating the regulations, recognized that public health is one of NTSB's mandates. HHS stated:

> We propose to define "public health authority" broadly, based on the function being carried out, not the title of the public entity. Therefore, disclosures under this proposed rule would not be limited to traditional public health entities such as State health departments. Other government agencies and entities carry out public health activities in the course of their missions. For example.... the National Transportation Safety Board investigates airplane and train crashes in an effort to reduce mortality and

[3] The NTSB is authorized to use formal investigative tools, including the issuance of subpoenas *ad testificandum* and subpoenas *duces tecum*. *See id.* at § 1113(a)(1)-(3).

> injury by making recommendations for safety improvements.... The definition of public health authority reflects the need for access to data and information by these other agencies and authorities consistent with their official mandates under applicable law.

64 Fed.Reg. 59918, at 59956 (Nov. 3, 1999) (proposed rule).

When HHS published its final rule, consistent with its statement above, the definition of "public health authority" was meant to be broad and far-reaching. *See* 65 Fed. Reg. 82462, at 82624 (Dec. 28, 2000). HHS expressly noted that the broad definition of "public health authorities" encompasses federal entities as varied as the Occupational Safety and Health Administration and the Mine Safety and Health Administration. *See id.* If agencies as varied as these qualify under the broad definition of "public health authorities," it should come as no surprise that the NTSB is also properly considered a public health authority.

**3. Federal statute allows the Court to adjudicate disputes relating to NTSB investigations, and HIPAA permits provision of protected material per Court Order.**

The arguments above establish that RIH has no basis in law for withholding the subpoenaed blood specimens. However, even if there were a basis in law for withholding the blood specimens, the Court has the power to compel compliance with the subpoena, in light of the Court's power to compel compliance with NTSB administrative subpoenas. *See, e.g.*, 49 U.S.C. § 1113(a)(4). Furthermore, HIPAA expressly permits covered entities to produce protected materials where a Court orders production. *See* 45 C.F.R. 164.512(e)(i) (Covered entity may disclose protected information "in response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order.").

As discussed above, the NTSB needs to test the blood specimens to complete its investigation. Absent provision of the blood specimens, NTSB cannot fully perform its federal statutory duties. The United States notes that in a recent case, an accident involving a Massachusetts Bay Transit Authority train, track worker impairment was found to be a factor,

and the NTSB, as a result of that investigation and in an effort to improve safety and minimize injuries, issued recommendations designed to prevent similar types of impairment. *See* Ex. A § 8.

**4. CHCIA, like HIPAA, does not restrict the provision of blood specimens, and even if it did, a properly issued federal subpoena trumps state law under the Supremacy Clause.**

Similar to HIPAA, the CHCIA sets forth various restrictions on the dissemination of confidential health care information. *See, e.g.*, R.I. Gen. Laws § 5-37.3-4. "Confidential health care information" means "a communication of health care *information* by an individual to a health care provider, including a transcription of any information, not intended to be disclosed to third persons…." *Id.* at 5-37.3-3(3)(i) (emphasis added). Again, as discussed above, blood specimens are not information.

Furthermore, the Supremacy Clause of the United States Constitution shields RIH from sanction under state law for complying with a federal subpoena. "When compliance with a federal subpoena compelled by the Supremacy Clause is at the same time the only act which could be a violation of state law, there remains no room for state law sanction." *See In re Joyce Hampers*, 651 F.2d 19, 21 (1st Cir., 1981); *e.g. EEOC v. City of Orange, Texas*, 905 F.Supp. 381, 382 (E. D. Tx. 1985) (Under Supremacy Clause, EEOC subpoena trumps state confidentiality laws and compels production of tapes.); *EEOC v. County of Hennepin*, 623 F.Supp. 29, 32 (D. Minn. 1985) (Administrative subpoena issued under federal law preempts state law restrictions under Supremacy Clause).

## CONCLUSION

For the aforementioned reasons, the United States requests that the Court compel Rhode Island Hospital to produce the federally subpoenaed blood specimens as specified in the subpoena, which is attached at Exhibit A(1). The United States further requests that Rhode Island Hospital take all reasonable efforts to ensure that the specimens not degrade or degenerate in transport, including contacting Investigator Ruben Payan in advance so as to allow Mr. Payan to make any arrangements necessary for transportation of the specimens.

Respectfully submitted,

UNITED STATE OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Milind M. Shah
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000 (telephone)
401-709-5017 (facsimile)
Email: milind.shah@usdoj.gov

Dated: April 14, 2008