IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE: ADMNISTRATIVE SUBPOENA ISSUED BY NATIONAL TRANSPORTATION SAFETY BOARD TO RHODE ISLAND HOSPITAL | Miscellaneous Action No. 08-33S |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF**
**THE UNITED STATE'S MOTION TO COMPEL PRODUCTION**

The United States, per request of the Court, provides the following supplemental briefing to assist the Court and refers the Court to the herein cited legal materials. In particular, the United States refers the Court to the following cases that discuss interpretation of HIPAA's provision relating to preemption and attaches them as Exhibit A: *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), *In Re Grand Jury Proceedings*, 450 F. Supp. 2d. 115 (D. Maine 2006); *National Abortion Fed'n v. Ashcroft*, 2004 WL 555701 (S.D.N.Y. Mar. 19, 2004).

There is no evidence to suggest that Congress intended to abridge the NTSB's public safety mission or the substantial legal authority the NTSB is endowed with to facilitate its safety investigations when it enacted the HIPAA. Congress tasked the NTSB with the somber responsibility of determining the cause of major transportation accidents and issuing safety recommendations to improve transportation safety. *See* 49 U.S.C. § 1101, *et seq*. Congress has, in addition, frequently passed legislation to ensure that NTSB investigations are supported by robust authority to conduct the NTSB's important public safety work. See, e.g., 49 U.S.C. § 1134. Most recently, in the aftermath of the crash of TWA Flight 800, Congress clarified that NTSB investigations have priority over criminal investigations unless and until it is decided by the United States Attorney General that the accident appears to have been caused by an intentional criminal act. **49 USC 1131(a)(2)(**B). Further, the federal judiciary has frequently recognized the importance of the NTSB mission. *See*, *e.g.*, *Chiron Corp. v. NTSB*, 198 F.3d 935 (D.C. Cir. 1999); *Brooks v. Burnett*, 920 F.2d 634 (10th Cir. 1990); *In Re Jacoby Airplane Crash Litigation*, 2007 WL 2746833 (D. N.J. 2007).

In enacting HIPAA in 1996, Congress included a provision entitled "Recommendations with Respect to Privacy of Certain Health Information." 42 U.S.C. § 1320d-2 (HIPAA, Section 264, P.L. 104-191, 1996 HR 3103). In particular, Congress directed that "[a] regulation promulgated under paragraph (1) shall not supercede a contrary provision of State law, if the provision of State law imposes requirements, standards, or implementation specifications that are more stringent than the requirements, standards, or implementation specifications imposed under the regulation." *Id.* The Department of Health and Human Services (HHS) subsequently promulgated HIPAA regulations, and these regulations specifically address the preemption authorized by HIPAA:

> A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met… (b) The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

45 C.F.R. Sec. 160.203.

HHS, in interpreting 42 U.S.C. § 1320d-2 (Section 264), did not perceive any Congressional intent, nor intend its own regulation, to create any reverse preemption. HHS stated in its proposed rulemaking notice:

> We considered whether the preemption provision of section 264(c)(2) of Public Law 104-191, discussed in the preceding section, would give effect to State laws that would otherwise be preempted by federal law. For example, we considered whether section 264(c)(2) could be read to make the Medicare program subject to State laws relating to information disclosures that are more stringent than the requirements proposed in this rule, where such laws are presently preempted by the Medicare statute. We also considered whether section 264(c)(2) could be read to apply such State laws to procedures and activities of federal agencies, *such as administrative subpoenas and summons, that are prescribed under the authority of federal law*. In general, we do not think that section 264(c)(2) would work to apply State law provisions to federal programs or activities with respect to which the State law provisions do not presently apply. Rather, the effect of section 264(c)(2) is to give preemptive effect to State laws that would otherwise be in effect, to the extent they conflict with and

> are more stringent than the requirements promulgated under the Administrative Simplification authority of HIPAA. Thus, we do not believe that it is the intent of section 264(c)(2) to give an effect to State law that it would not otherwise have in the absence of section 264(c)(2).

Standards for Privacy of Individually Identifiable Health Information, 64 F.R. 59918, 60000 (November 3, 1999) (emphasis added). In interpreting HIPAA's provisions pertaining to preemption, a court "must defer to HHS's reasonable interpretation of HIPAA." *National Abortion Fed'n v. Ashcroft*, 2004 WL 555701, at *5 (S.D.N.Y. Mar. 19, 2004). "HIPAA is at best ambiguous about the effect of more stringent state laws in areas controlled by federal law prior to HIPAA. HHS reasonably construed section 264(c)(2) to give no more effect to state law than it would have had in the absence of HIPAA.

Under HHS's interpretation, because Rhode Island's medical privacy laws would not have affected the enforcement of an NTSB administrative subpoena issued pursuant to federal law independent of the enactment of HIPAA,[1] the existence of a supposedly more-stringent Rhode Island medical privacy standard than that contained in HIPAA should not now operate to elevate the effect of Rhode Island law to the point that it would diminish the NTSB's federal subpoena authority. Courts in other jurisdictions have reached a similar conclusion under similar circumstances. *See*, *e.g.*, *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), *In Re Grand Jury Proceedings*, 450 F. Supp. 2d. 115 (D. Maine 2006); *National Abortion Fed'n*, 2004 WL 555701, at **3-6.

Even apart from HHS's interpretation, the language of section 264(c)(2) does not suggest any intention to federalize state law. The Southern District of New York explains that

> there is a difference… between a federal law that does not preempt a state law and a federal law that incorporates a state rule of law. The latter gives the state law the force of federal law and makes it binding where it would not otherwise be; the former merely allows the state law to continue to operate in its sphere of influence, unaffected by the federal statute. The negative language in section

[1] As with any federal question – here a the validity of a federal subpoena issued under the NTSB's authority under the National Transportation Safety Act – federal law provide the rule of decision, and supercedes state law under the Supremacy Clause of the United States Constitution. *See* U.S. Const. Art. VI, § 2.

> 264(c)(2) does not equate to the positive power to create binding law in the federal domain-here, a case arising under federal law brought in federal court.

*National Abortion Fed'n*, 2004 WL 555701, at *4. The NTSB's motion to compel has been brought in federal court pursuant to federal law, namely 49 U.S.C. § 1113(a)(4). The negative language in section 264(c)(2) cannot be read, on its face, to exhibit any intention to federalize state law. Moreover, the fact that Congress has given the NTSB substantial investigative powers, has passed legislation to bolster those investigative powers, and has not amended any of this legislation in the course of enacting HIPAA, further demonstrates that 264(c)(2) cannot be read to federalize Rhode Island law.

For the aforementioned reasons and for the reasons set forth in the United State's Motion to Compel, the United States submits that Rhode Island Hospital has no basis for its failure to comply with the NTSB's administrative subpoena. First, HIPAA, based on the plain language of the regulations, does not cover blood or biological material but rather is limited to protected health *information*. Biological material is not information; descriptions or analyses of biological materials would be information. Second, even if HIPAA were to apply to the requested blood specimens, 45 C.F.R. 164.512(b)(1) makes plain that HIPAA does not prevent production of biological materials to a public health authority, such as the NTSB. HHS's own rule promulgation makes clear that NTSB is a public health authority. Third, even if HIPAA were to apply and were deemed to limit Rhode Island Hospital's production of blood, the Court can and, based on the Declaration of NTSB's Senior Investigator Ruben Payan, should order Rhode Island Hospital to produce the blood specimens as the Court is authorized to do under 49 U.S.C. §1113(a)(4).[2] HIPAA (and Rhode Island law) permit production pursuant to Court order. These

[2] The Court noted that the NTSB's investigation could be used in furtherance of civil or criminal action and that the NTSB's unfettered access to blood specimens under such circumstances seemed irregular. As an initial matter, the NTSB's investigations are conducted on a probable cause standard and accordingly the admissibility of facts or conclusions from these reports for court proceedings is not certain. Moreover and more importantly, in asserting that HIPAA does not cover biological material, the United States has not and does not assert the more general position that there is no legal basis for withholding the production of biological materials in response to an administrative subpoena. The United States merely asserts that Rhode Island Hospital's has not provided one. Furthermore, even if Rhode Island Hospital had provided a

three points are discussed with supporting legal citation in the Motion to Compel. Fourth, as discussed above and in the Motion to Compel, Rhode Island state law does not, by virtue of section 264(c)(2) apply in a federal forum examining a federal question.

Respectfully submitted,

UNITED STATE OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Milind M. Shah
Milind M. Shah
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

401-709-5000 (telephone)
401-709-5017 (facsimile)

Email: milind.shah@usdoj.gov

Dated: May 23, 2008

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 23rd day of May 2008, I electronically filed the within Supplemental Briefing with Exhibit A with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Linn Freedman
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903

/s/ Milind M. Shah
Milind M. Shah

legal basis, the United States, by setting forth its need for the materials in the Declaration of Senior NTSB Investigator Ruben Payan, has set forth a basis sufficient for production of the blood specimens requested. Moreover, even Rhode Island Hospital does not dispute that the United States has set forth a factual basis – the facts setting forth the specific investigational need – sufficient to warrant production of the blood specimens.